[No. 61571-8-I.  Division One.  May 18, 2009.]

ROBERT C. WOO ET AL., *Appellants*, v. FIREMAN'S FUND INSURANCE COMPANY ET AL., *Respondents*.

*Charles K. Wiggins* (of *Wiggins & Masters, PLLC*); *Richard B. Kilpatrick*; and *Richard A. Bergh* (of *Law Office of Andrew Bergh, PS*), for appellants.

*Michael B. King* and *Emilia L. Sweeney* (of *Carney Badley Spellman, PS*), for respondents.

¶1 Cox, J. — What is the governing interest rate on a judgment based on claims of tortious conduct, breach of contract, and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW? Because the judgment before us is not divisible and is primarily based on the tortious conduct of the defending insurers, we hold that the governing rate is that specified in RCW 4.56.110(3), the rate for "[j]udgments founded on the tortious conduct of individuals or other entities." We affirm.[1]

¶2 Fireman's Fund Insurance Company and National Surety Corporation, its corporate affiliate (collectively Fireman's Fund), provided liability insurance for Dr. Robert Woo, an oral surgeon.[2] Tina Alberts, a former employee of Dr. Woo, sued him based on a practical joke he played on her while she was under anesthesia during a dental procedure.[3] She claimed outrage, battery, invasion of privacy, false light, public disclosure of private acts, nonpayment of overtime wages, retaliation for requesting payment of overtime wages, medical negligence, lack of informed consent, and negligent infliction of emotional distress.[4] At the time of Alberts's suit, Dr. Woo's policy contained provisions for professional liability, employment practices liability, and general liability. Nevertheless, some five months after Alberts sued, Fireman's Fund notified Dr. Woo that his policy did not cover the claims asserted in her suit and declined to fund his defense.

¶3 Because Fireman's Fund refused to defend him, Dr. Woo incurred attorney fees to defend against the claims. Just prior to trial, he settled with Alberts for $250,000.

---

[1] We deny Fireman's Fund's Motion for Relief from GR 14.1(a) and Dr. Woo's Motion to Strike References to Unpublished Opinions and Imposition of Sanctions.

[2] Fireman's and National Surety Corporation are corporate affiliates. Fireman's stipulated that it would take responsibility for the acts and omissions of its corporate affiliate, National Surety. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 48 n.1, 164 P.3d 454 (2007) (*Woo II*).

[3] *Id.* at 48-49.

[4] *Id.* at 50.

¶4 Dr. Woo then commenced this action against Fireman's Fund, alleging breach of the duty to defend under the policies, bad faith, and violation of the CPA. He also claimed that Fireman's Fund was estopped from denying coverage under the policies as a result of its breach of the duty to defend.

¶5 On cross motions for summary judgment, the trial court granted Dr. Woo's motion for partial summary judgment that Fireman's Fund breached its duty to defend. The case proceeded to trial on the bad faith and CPA claims. By special verdict, the jury found that Fireman's Fund failed to act in good faith and that the failure was the proximate cause of Dr. Woo's damages in the amount of $750,000. The jury also found that Fireman's Fund violated the CPA and the violation was the proximate cause of Dr. Woo incurring legal expenses to defend against Alberts's claim.

¶6 On September 15, 2003, the trial court entered a corrected judgment on the verdict against Fireman's Fund. The judgment included a principal judgment amount of $1,081,554.95 together with prejudgment interest, attorney fees, and costs.[5]

¶7 Fireman's Fund appealed. In 2004, while the appeal was before this court for review, the legislature amended RCW 4.56.110 to set the interest rate for judgments founded on tortious conduct.[6] Before the amendment, the statute had no separate interest rate for judgments founded on tortious conduct.[7] The legislature specifically made the amendment retroactive to include judgments that were entered before its effective date and still accruing interest on the effective date of the amendment.[8] The corrected judgment that the trial court entered in this case fell within the scope of this 2004 amendment.

---

[5] Clerk's Papers at 1.

[6] RCW 4.56.110(3); Laws of 2004, ch. 185, § 2.

[7] Former RCW 4.56.110 (1989).

[8] Laws of 2004, ch. 185, § 3.

¶8 Following a decision adverse to Dr. Woo from this court,[9] the supreme court granted review, reversed in part this court's decision, and reinstated Dr. Woo's corrected judgment.[10] The parties then returned to the trial court for further proceedings.

¶9 In February 2008, Fireman's Fund paid Dr. Woo the amount it had calculated as due on the corrected judgment plus postjudgment interest. Fireman's Fund also paid Dr. Woo additional funds in recognition that it would also have to pay attorney fees and costs for the first appeal, amounts that had not yet been awarded by the court.

¶10 Thereafter, Fireman's Fund moved for full satisfaction of judgment, which Dr. Woo opposed in part. The trial court granted the motion.

¶11 Dr. Woo appeals.

## INTEREST ON JUDGMENTS

*Mixed Judgment: Single or Multiple Rates*

¶12 We first address a threshold question: whether a mixed judgment—one based on multiple types of claims—is subject to multiple postjudgment interest rates. The parties appear to agree that only one interest rate under RCW 4.56.110 should apply to the corrected judgment in this case. We agree that only one interest rate applies to the corrected judgment here.

¶13 Our fundamental objective in reading a statute is to ascertain and carry out the legislature's intent.[11] If a statute's meaning is plain on its face, then we must give effect to that plain meaning.[12] Under the plain meaning

---

[9] *Woo v. Fireman's Fund Ins. Co.*, 128 Wn. App. 95, 114 P.3d 681 (2005), *rev'd*, *Woo II*, 161 Wn.2d 43.

[10] *Woo II*, 161 Wn.2d 43.

[11] *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

[12] *Id.*

rule, such meaning is derived from all that the legislature has said in the statute and related statutes that disclose legislative intent about the provision in question.[13] An undefined statutory term should be given its usual and ordinary meaning.[14] A court should not adopt an interpretation that renders any portion meaningless.[15] The interpretation that the court adopts should be the one that best advances the legislative purpose.[16] Strained meanings and absurd results should be avoided.[17] The meaning of a statute is a question of law that we review de novo.[18]

¶14 RCW 4.56.110 sets forth the interest rates for four categories of judgments: (1) breach of contract where an interest rate is specified, (2) child support, (3) tort claims, and (4) all other claims. It provides, in relevant part:

> Interest on judgments shall accrue as follows:
>
> (1) Judgments founded on written contracts, providing for the payment of interest until paid at a specified rate, shall bear interest at the rate specified in the contracts. . . .
>
> (2) All judgments for unpaid child support . . . shall bear interest at the rate of twelve percent.
>
> (3) Judgments founded on the tortious conduct of individuals or other entities, whether acting in their personal or representative capacities, shall bear interest from the date of entry at two percentage points above the equivalent coupon issue yield, as published by the board of governors of the federal reserve system, of the average bill rate for twenty-six week treasury bills as determined at the first bill market auction conducted during the calendar month immediately preceding the date of entry. In any case where a court is directed on review to enter judgment on a verdict or in any case where a judgment entered

---

[13] *Id.* at 11-12.

[14] *Burton v. Lehman*, 153 Wn.2d 416, 422-23, 103 P.3d 1230 (2005).

[15] *State v. Keller*, 143 Wn.2d 267, 277, 19 P.3d 1030 (2001).

[16] *Key Bank of Puget Sound v. City of Everett*, 67 Wn. App. 914, 917, 841 P.2d 800 (1992).

[17] *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989).

[18] *Okeson v. City of Seattle*, 150 Wn.2d 540, 548-49, 78 P.3d 1279 (2003).

on a verdict is wholly or partly affirmed on review, interest on the judgment or on that portion of the judgment affirmed shall date back to and shall accrue from the date the verdict was rendered.

(4) Except as provided under subsections (1), (2), and (3) of this section, judgments shall bear interest from the date of entry at the maximum rate permitted under RCW 19.52.020 on the date of entry thereof. In any case where a court is directed on review to enter judgment on a verdict or in any case where a judgment entered on a verdict is wholly or partly affirmed on review, interest on the judgment or on that portion of the judgment affirmed shall date back to and shall accrue from the date the verdict was rendered. . . .[19]

¶15 The postjudgment interest rates provided for by statute differ according to the category of the judgment. But it is not uncommon for a judgment to be based on more than one of the four categories outlined above. The question is what rate or rates apply to such "mixed judgments."

¶16 The statute does not directly address this question. The plain language of the statute does not appear to contemplate that multiple interest rates should apply to a single judgment. The judgment here, which predates the 2004 amendments to RCW 4.56.110, expressly states that a postjudgment rate of 12 percent was to apply. But that does not end our inquiry.

¶17 Where the legislature uses certain statutory language in one instance and different language in another, there is generally a difference in legislative intent.[20] RCW 4.56.110 refers to "judgments." But a related statute, RCW 4.56.250, provides in relevant part as follows:

(2) In no action seeking *damages* for personal injury or death may a *claimant* recover a *judgment* for noneconomic damages exceeding an amount . . . . The limitation contained in this subsection applies to all *claims* for noneconomic *dam-*

---

[19] RCW 4.56.110.

[20] *United Parcel Serv., Inc. v. Dep't of Revenue*, 102 Wn.2d 355, 362, 687 P.2d 186 (1984).

*ages* made by a *claimant* who incurred bodily injury. *Claims for loss of consortium* . . . .[21]

¶18 An examination of this latter statute makes clear that the legislature draws a distinction between "claims" or "damages" and "judgments." Applying this observation to RCW 4.56.110, we conclude that "Interest on judgments" means exactly what it says. The interest is applied to judgments, nothing else. Accordingly, interest under the subsections of the statute is to be applied to the judgment, not the various categories of claims or damages underlying the judgment.

### Controlling Interest Rate

¶19 Dr. Woo argues that the trial court erred in granting Fireman's Fund's motion for a full satisfaction of judgment. He claims that the judgment was not founded on tortious conduct within the meaning of RCW 4.56.110(3), but on the insurance contract with Fireman's Fund. Thus, he contends that the "catch-all" interest rate found in RCW 4.56.110(4) should apply. We disagree.

¶20 For purposes of the case before us, subsections (3), tort claims, and (4), all other claims, are the only subsections that potentially apply:

Interest on judgments shall accrue as follows:

 . . . .

(3) Judgments founded on the ***tortious conduct of individuals or other entities***, whether acting in their personal or representative capacities, ***shall bear interest from the date of entry at two percentage points above the equivalent coupon issue yield, as published by the board of governors of the federal reserve system, of the average bill rate for twenty-six week treasury bills as determined at the***

---

[21] RCW 4.56.250 (emphasis added) (distinguishes economic damages from noneconomic damages; held unconstitutional in *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 771 P.2d 711 (1989)). Nevertheless, the ruling that the statute is unconstitutional is irrelevant to the purpose for which we cite the statute: determining legislative intent.

*first bill market auction conducted during the calendar month immediately preceding the date of entry. . . .*

(4) Except as provided under subsections (1), (2), and (3) of this section, judgments shall bear interest from the date of entry at the maximum rate permitted under **RCW 19.52.020** on the date of entry thereof. . . .[22]

¶21 RCW 19.52.020 provides in relevant part:

(1) Any rate of interest shall be legal so long as the rate of interest does not exceed the higher of: *(a) Twelve percent per annum; or (b) four percentage points above the equivalent coupon issue yield (as published by the Board of Governors of the Federal Reserve System) of the average bill rate for twenty-six week treasury bills* as determined at the first bill market auction conducted during the calendar month immediately preceding the later of (i) the establishment of the interest rate by written agreement of the parties to the contract, or (ii) any adjustment in the interest rate in the case of a written agreement permitting an adjustment in the interest rate. . . .[23]

¶22 Here, the parties agree that the interest rate under subsection (3), for purposes of this case, is 3.43 percent. The order on review indicates this was the rate at the time of entry of the judgment.[24] Correspondingly, the interest rate under subsection (4) would be 12.00 percent, which was higher than the index plus 4.00 percent at the time of entry of the judgment.

██ ¶23 The phrases "founded on" and "tortious conduct" are not defined in RCW 4.56.110 or in any related provision. The parties agree that "founded on" should be given its dictionary meaning, which is "having as a basis."[25] We too agree with that meaning.

---

[22] RCW 4.56.110 (emphasis added).

[23] (Emphasis added.)

[24] Clerk's Papers at 134.

[25] BLACK'S LAW DICTIONARY 66 (7th ed. 1999); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 897-98 (1993) ("found" means "to serve as a basis for").

¶24 But they part company as to how to apply this agreed meaning to the facts of this case. Dr. Woo argues that his judgment against Fireman's Fund is founded or based on the insurance contract that Fireman's Fund breached. Fireman's Fund takes another view. It contends that the fact that the parties' initial relation was founded on contract is not dispositive. Rather, it is the foundation of the claims that drives the question of what interest rate applies.

¶25 While it is true, as Dr. Woo argues, that his relationship with Fireman's Fund stems from an insurance contract and that Fireman's Fund breached the contract, that does not answer the question here. Our supreme court articulated a principle that applies here in the seminal case of *Safeco Insurance Co. of America v. Butler*.[26] There, Safeco commenced a declaratory judgment action against its insured to determine whether a husband's firing a pistol into a truck, striking its driver, was covered under a homeowners policy. In discussing whether Safeco's argument, which was grounded in contract, applied to the case, the supreme court stated as follows:

> In *Tank*, we recognized the insurer has an "enhanced obligation of fairness toward its insured." That enhanced obligation imposes a duty beyond that of the standard contractual duty of good faith. Thus Safeco's contract theory of remedy is inappropriate for two reasons.
>
> First, *a* **Tank** *violation results in a cause of action which arises from the contract and the fiduciary relationship, and which sounds in tort. Any remedy must take into account all of the aspects of the insurer/insured relationship. We cannot focus solely on the contract aspect of that relationship*.
>
> Second, *the remedy must also take into account the purpose of creating a bad faith cause of action. If the only remedy available were the limits of the contract, then there would be no distinction between an action for an insurer's wrongful but good faith conduct, and an*

---

[26] 118 Wn.2d 383, 823 P.2d 499 (1992).

*action for its bad faith conduct.* An insurer could act in bad faith without risking any additional loss. This would render *Tank* meaningless. An estoppel remedy, however, gives the insurer a strong disincentive to act in bad faith. Therefore, an estoppel remedy better protects the insured against the insurer's bad faith conduct.[27]

¶26 Applying the above principles to this case, we conclude that it does not follow that all damages underlying the judgment before us should be characterized as contract damages for purposes of determining the interest rate on the judgment. As our supreme court observed, we must not limit our consideration of the interest award to the contract aspect of the relationship. Rather, we must "take into account all of the aspects of the insurer/insured relationship."[28]

¶27 The purpose of requiring a defendant to pay interest on a judgment is to compensate the plaintiff for the lost value of money when it was properly attributable to the plaintiff but in the defendant's possession.[29] Given that the legislature has expressly provided for different rates of interest on judgments that depend on the nature of the underlying claim or damages, it follows that we should examine these aspects of the judgment in this case to determine what rate applies.

¶28 Insurers have a duty to handle claims in good faith under RCW 48.01.030.[30] A breach of this duty sounds in the tort of bad faith.[31]

¶29 "The general rule regarding damages for an insurer's breach of contract is that the insured must be put in as good a position as he or she would have been had the

---

[27] *Id.* at 393-94 (emphasis added) (citations omitted) (citing *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 383-85, 715 P.2d 1133 (1986)).

[28] *Id.*

[29] *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 552, 114 P.3d 1182 (2005).

[30] *Kirk v. Mount Airy Ins. Co.*, 134 Wn.2d 558, 560, 951 P.2d 1124 (1998).

[31] *Safeco*, 118 Wn.2d at 389.

contract not been breached."[32] In the failure to defend context, the insured's remedies may include "the amount of expenses, including reasonable attorney fees the insured incurred defending the underlying action,"[33] "the amount of the judgment entered against the insured,"[34] the amount of a reasonable settlement by the insured,[35] and, in a proper case, the costs of an action against the insurer to recover those costs.[36]

¶30 In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded.[37] "The tort of bad faith recognizes that traditional contract damages do not provide an adequate remedy for a bad faith breach of contract because an insurance contract is typically an agreement to pay money, and recovery of damages is limited to the amount due under the contract plus interest."[38] When an insurer "breaches the duty to defend in bad faith, the insurer . . . should be estopped from asserting the claim is outside the scope of the contract and, accordingly, that there is no coverage."[39] This "coverage by estoppel" remedy creates liability for the insurer to pay at least policy limits for any claim that should have been defended but was not.[40] In addition,

---

[32] *Kirk*, 134 Wn.2d at 561 (citing *Greer v. Nw. Nat'l Ins. Co.*, 109 Wn.2d 191, 202-03, 743 P.2d 1244 (1987)).

[33] *Id.*

[34] *Id.*

[35] *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 739, 49 P.3d 887 (2002).

[36] *Woo II*, 161 Wn.2d at 70-71 ("In a duty to defend action, an insured is entitled to fees on appeal, pursuant to RAP 18.1, because the insurer 'compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract.'" (quoting *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991))).

[37] *Kirk*, 134 Wn.2d at 560.

[38] *Id.*

[39] *Id.* at 564.

[40] *Id.*

remedies under the CPA may be available if the insured provides proof of causation and damages.[41]

¶31 Here, the jury found by special verdict that Fireman's Fund acted in bad faith and awarded damages of $750,000 to Dr. Woo. This sounds in tort.

¶32 The court determined that the proportionate share of total defense expenses in the underlying action by Alberts against Dr. Woo that Fireman's Fund declined to defend against totaled $71,554.95 in damages. This award sounds in contract.[42]

¶33 The court also awarded Dr. Woo $250,000 based on the jury's finding of bad faith of Fireman's Fund and application of the remedy of insurance coverage by estoppel. This too sounds in tort.

¶34 The court made a further award of $10,000 as the maximum treble damages award allowed under the CPA based on the jury determination that Fireman's Fund violated that statute. The CPA is a statutory remedy outside the scope of common law torts. Because this amount is so small in light of the entire judgment, we need not decide whether this amount is founded on tortious conduct for purposes of determining postjudgment interest.

¶35 Finally, the court awarded total fees and expenses of $559,394.32 to Dr. Woo based on *Olympic Steamship Co. v. Centennial Insurance Co.*,[43] bad faith, and the CPA. Of this amount, the court awarded $96,396.22 to Dr. Woo in necessary litigation expenses "in light of the jury's finding that defendants breached their duty of good faith." This latter amount sounds in tort. Of the total fees and expenses, the

---

[41] *See Griffin v. Allstate Ins. Co.*, 108 Wn. App. 133, 148 n.52, 149, 29 P.3d 777 (2001) (questions of fact existed on bad faith and CPA claims; court noted that the CPA claims were "derivative of the bad faith claims"); *see also First State Ins. Co. v. Kemper Nat'l Ins. Co.*, 94 Wn. App. 602, 971 P.2d 953 (1999) (jury verdict for bad faith reversed where trial court improperly excluded CPA and negligence claims).

[42] *See Kirk*, 134 Wn.2d at 561 (damages for insurer's breach of contract include the amount of expenses the insured incurred defending the underlying action, including reasonable attorney fees).

[43] 117 Wn.2d 37, 811 P.2d 673 (1991).

court also awarded $71,524.25 under *Olympic Steamship* for Dr. Woo's costs in establishing the duty to defend and the amount owing for that duty. This amount sounds in contract.[44]

¶36 The remaining amount of fees was attributed to attorney and staff time for both CPA and bad faith recovery. On this record, we have no basis to allocate fees between these two categories. But even if we were to allocate most of the fees to the CPA claim, the amount would be insufficient to persuade us that we should reach a different result than we describe in the next paragraphs. We therefore do not consider this latter portion of attorney fees in our analysis.

¶37 Given that we concluded that only one interest rate applies to the judgment before us, the question is which one controls. We conclude that the rate specified in RCW 4.56.110(3), that for "[j]udgments founded on the tortious conduct of individuals or other entities," controls.

¶38 Considering the component parts of the judgment, it is clear that it is primarily based on amounts founded on or based on the tortious conduct of Fireman's Fund. In fact, over $1,000,000 of the total judgment is based on such conduct, without consideration of the portion of attorney fees, which we are unable to characterize on this record. We conclude that since the legislature chose to impose different interest rates on judgments based on what they are founded on, application of the tortious conduct interest rate to this mixed judgment best effectuates the intent of the legislature. Accordingly, application of RCW 4.56.110(3) to the entire judgment in this case is most persuasive.

¶39 Dr. Woo argues that subsection (4) applies to this mixed judgment. He contends that mixed judgments by their nature are not founded on tortious conduct. He claims this is so even when, as in this case, the judgment includes *some* claims for torts. We are not persuaded by this argument.

---

[44] *See id.* at 53 (award of fees required in any legal action where the insurer compels the insured to assume the burden of legal action to obtain the full benefit of his insurance contract).

¶40 If this were true, some provisions of the statute would be rendered meaningless. By this interpretation, for example, any case with 99 percent of its damages flowing directly from tort claims and the remaining damages flowing from other types of claims would be subject to the interest rate in subsection (4).

¶41 As we have explained, the legislature made clear by its 2004 amendment that judgments based on tortious conduct would be subject to the base index plus two percent. It left in place the new subsection (4) that makes other types of judgments subject to the higher of 12 percent or the base index plus 4 percent. Dr. Woo's interpretation would render subsections (1) through (3) meaningless if any kind of "mixed" judgment, flowing from multiple types of claims, is automatically subject to subsection (4). This makes no sense.

¶42 Related case law supports the conclusion that this was a judgment founded on tortious conduct. In determining the applicability of RCW 4.56.110(3), the courts have looked to earlier case law that evaluated whether the claims constituted tortious conduct for determining the appropriate statute of limitations.[45] This analysis is helpful here to the extent that it supports that the bad faith claims are founded on tortious conduct because claims for bad faith are subject to the three-year statute of limitations for torts.[46] In reaching this conclusion we acknowledge that the CPA claim is subject to a statutory four-year statute of

---

[45] See Stevens v. Brink's Home Sec., Inc., 162 Wn.2d 42, 51, 169 P.3d 473 (2007) (court determined that claims under the Washington Minimum Wage Act (MWA), chapter 49.46 RCW, accrue interest under RCW 4.56.110(4); court had previously held that MWA claims were not "tortious conduct" in determining the statute of limitations (citing Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co., 139 Wn.2d 824, 838, 991 P.2d 1126, 1 P.3d 578 (2000))); Little v. King, 147 Wn. App. 883, 888-89, 198 P.3d 525 (2008) (judgment for uninsured motorist benefits against insurer accrues interest under RCW 4.56.110(4); court had previously held that uninsured motorist claims were subject to the six-year statute of limitations for written contracts rather than the three-year statute for torts (citing Safeco Ins. Co. v. Barcom, 112 Wn.2d 575, 579-81, 773 P.2d 56 (1989))).

[46] RCW 4.16.080; O'Neill v. Farmers Ins. Co. of Wash., 124 Wn. App. 516, 529-30, 125 P.3d 134 (2004).

limitations, independent of the scope of the general contract and tort limitations periods.[47]

¶43 The parties also argue that if we agree with Dr. Woo and reverse the trial court's order entering a full satisfaction of judgment, we should give direction as to how Fireman's Fund's payment of $2,175,252.85 on February 28, 2008, should be applied. Because this conditional request is moot in view of our decision, we do not address it.

¶44 We also note that the order on appeal includes a conditional ruling that if this court declined to apply a single interest rate to the judgment, multiple rates should apply. Because we conclude that one rate applies to the judgment, we vacate that portion of the lower court's ruling.

## ATTORNEY FEES

¶45 Dr. Woo argues that he is entitled to recover fees for this postjudgment litigation. We disagree.

¶46 In Washington, attorney fees are not recoverable by the prevailing party unless recovery is permitted by contract, statute, or a recognized ground in equity.[48]

¶47 Dr. Woo cites to two cases, without argument, to support his request for attorney fees on appeal. The first, *Lindsay v. Pacific Topsoils, Inc.*,[49] is inapplicable here because the attorney fees were awarded under RCW 49-.48.030, a statute with no relevance to Dr. Woo's appeal.[50] He also cites *Olympic Steamship*.[51] But *Olympic Steamship* authorizes an award of attorney fees only if the insured is required to litigate an issue of coverage, as opposed to the

---

[47] RCW 19.86.120; *O'Neill*, 124 Wn. App. at 530.

[48] *Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 142-43, 26 P.3d 910 (2001).

[49] 129 Wn. App. 672, 120 P.3d 102 (2005).

[50] *See* RCW 49.48.030 (providing for attorney fees where a person is successful in recovering judgment for wages or salary owed to him or her).

[51] 117 Wn.2d 37.

value of the claim.[52] That case does not support an award of fees here, where the central dispute is over which rate of interest applies to the judgment. Dr. Woo is not entitled to attorney fees on appeal.[53]

¶48 We affirm the order except for the conditional ruling on application of multiple interest rates, which we vacate.

DWYER, A.C.J., and LEACH, J., concur.

Review denied at 167 Wn.2d 1008 (2009).

---

[52] *Price v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 490, 497-98, 946 P.2d 388 (1997).

[53] *See Little*, 147 Wn. App. at 891 (no attorney fees under *Olympic Steamship* on appeal because dispute was regarding postjudgment interest rate, not coverage).