[No. 64516-1-I.   Division One.   April 4, 2011.]

Unigard Insurance Company, *Respondent*, v. Mutual of Enumclaw Insurance Company, *Appellant*.

---

914

*Steven A. Branom* (of *Hackett Beecher & Hart*) and *Ronald S. Dinning,* for appellant.

*Karen S. Weaver* (of *Soha & Lang PS*), for respondent.

¶1 BECKER, J. — Mutual of Enumclaw breached its duty of good faith to defend its insured. Because of the breach, harm to the insured was presumed and Mutual of Enumclaw had the burden to rebut this presumption. Having failed to carry its burden at trial, Mutual of Enumclaw seeks reversal primarily based on alleged errors that are neither preserved nor properly assigned. We reverse in part only because the trial court applied the wrong rate of prejudgment interest.

¶2 Charles Engelmann bought property in 1979 that was formerly used as a dry cleaning facility. After owning the property for about two years, he sold it to a general partnership, Newmarket I. In 1996, the Washington State Department of Ecology notified Newmarket that it was potentially liable for release of hazardous substances at the property under the Model Toxics Control Act, chapter 70.105D RCW. Based on the prospect of state enforcement, Newmarket entered into a voluntary clean-up program. Investigation revealed soil and groundwater contamination at the site. Newmarket incurred cleanup costs.

¶3 In 2001, Newmarket sued Engelmann, and other former owners of the property, making claims for contribution. Engelmann tried to tender defense to the carrier of his homeowner's policy, Mutual of Enumclaw Insurance Company. Mutual of Enumclaw denied coverage and refused to defend.

¶4 Left to deal with the claims on his own, Engelmann entered into a settlement agreement with Newmarket. He agreed to pay Newmarket $20,000 and to assign Newmarket all his rights against Mutual of Enumclaw. In return, Newmarket released Engelmann from all claims except to the extent they could be satisfied through the assignment of rights. Engelmann did not admit liability. The agreement expressly stated that the settling parties denied liability "for any and all claims related to the Site, the Facility and the Contribution Action."

¶5 Newmarket designated the rights it had obtained from Engelmann to its own insurer, Unigard Insurance Company. Unigard sued Mutual of Enumclaw for breach of contract; bad faith; and violation of the Consumer Protection Act, chapter 19.86 RCW. The parties each moved for partial summary judgment on the issue of liability. The trial court granted Unigard's motion. Mutual of Enumclaw has not assigned error to this ruling.

¶6 The parties proceeded to trial by jury on the remaining issue of the amount of damages owed by Mutual of Enumclaw for its bad faith conduct. Unigard called four

witnesses to establish damages. Engelmann's attorney and Newmarket's attorney described the underlying suit and the settlement agreement that resolved it. Their testimony established the amount of legal fees incurred by each side. Lauren Carroll, a licensed hydrogeologist, testified about the contamination at the site, went over the bills paid to investigate and clean the site, and estimated the future clean-up costs. A claims manager from Unigard testified to a number of bills paid by Unigard in relation to the litigation and cleanup. Mutual of Enumclaw did not call any witnesses. Mutual of Enumclaw did seek to admit Engelmann's deposition testimony to the effect that he did not himself engage in any polluting activity. The court rejected it because Mutual of Enumclaw agreed the testimony was not relevant to the issue of damages. Mutual of Enumclaw has not assigned error to this ruling.

¶7 At the end of trial, the jury returned a verdict in favor of Unigard for $1,033,488.99 in past economic damages and $312,500.00 in future economic damages. The court awarded prejudgment interest on the past damages, $10,000.00 in treble damages under the Consumer Protection Act, and attorney fees and costs of $154,260.46. In total, the final judgment entered was $2,023,837.20. Mutual of Enumclaw moved unsuccessfully for a new trial and now appeals.

## BAD FAITH LAW

¶8 Mutual of Enumclaw contends the trial court misapplied Washington bad faith law.

¶9 The law governing bad faith insurance actions is well established. Insurers have a duty to act in good faith, and the failure to do is actionable in tort. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992). An insurer is liable for the tort of bad faith if the insurer breaches its good faith duty to defend. *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 951 P.2d 1124 (1998). Once bad faith has been established, a rebuttable presumption of harm

arises. *Kirk*, 134 Wn.2d at 562. Where an insurer acts in bad faith in failing to defend, the insurer is estopped from asserting coverage defenses, meaning that liability in excess of policy limits may be imposed on the insurer. *Kirk*, 134 Wn.2d at 563-64.

¶10 The facts in this case resemble, up to a point, a pattern frequently seen in litigation over bad faith by an insurance company. A defendant is sued and seeks coverage. The defendant's insurer refuses to defend. The defendant enters into a settlement agreement with the plaintiff. The defendant stipulates to entry of a judgment and assigns to the plaintiff any claims against the insurer in exchange for the plaintiff's promise not to execute the judgment against the defendant. This is called a covenant judgment. *See Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 734, 49 P.3d 887 (2002). The plaintiff, now standing in the defendant's shoes, sues the insurer for bad faith and related claims, seeking to recover the agreed settlement amount. If the insurer is liable for bad faith and the covenant judgment is reasonable, the presumptive measure of damages is the amount in the covenant judgment. *Besel*, 146 Wn.2d at 738. The plaintiff has the burden of proving the covenant judgment is reasonable. *Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 510, 803 P.2d 1339, *review denied*, 117 Wn.2d 1018 (1991).

¶11 This case follows the pattern except there was no covenant judgment. Engelmann did not admit liability or stipulate to a judgment amount. He merely assigned to Newmarket his rights against Mutual of Enumclaw. Because there was no presumptive measure of damages arising from the settlement agreement, the task of determining Engelmann's damages remained an issue for trial.

¶12 With this background in mind, we turn to Mutual of Enumclaw's first two assignments of error. Mutual of Enumclaw contends the trial court erroneously ruled that Engelmann was liable for all of Newmarket's clean-up costs:

1. The trial court erred when it construed the Agreement between Engelmann and Newmarket as an assumption of liability for 100% of Newmarket's environmental cleanup costs, when the Agreement itself contains express language to the contrary.

2. The trial court erred when it misapplied Washington bad faith law to conclude that MOE [Mutual of Enumclaw] was not entitled to either defend on the issue of Engelmann's liability under the Agreement or challenge whether an assumption of 100% liability for Newmarket's cleanup costs was "reasonable," and instead limited MOE's defenses to whether the Agreement was the product of fraud or collusion.

¶13 The problem for Mutual of Enumclaw is that these alleged errors concern rulings the trial court did not make. Nowhere did the court determine that the agreement made Mutual of Enumclaw liable for all of Newmarket's cleanup costs.

¶14 Mutual of Enumclaw has not assigned error to important rulings the court did make in shaping the case for the jury. Mutual of Enumclaw contested two of Unigard's motions in limine. First, Unigard moved to exclude "evidence, testimony and argument on any issue other than damages because it is irrelevant given the Court's prior rulings in the case." Second, Unigard moved to exclude "any argument or evidence that damages are limited to the Engelmanns' out of pocket costs or that Unigard is not entitled to recover any damages." The court granted the motions based on its earlier ruling granting Unigard's motion for partial summary judgment on Mutual of Enumclaw's liability for bad faith. Mutual of Enumclaw has not assigned error to these rulings.

¶15 The court also carefully considered both parties' positions with respect to the precise issue being put before the jury. Unigard wanted the damages instruction to include mandatory elements of damage. Mutual of Enumclaw wanted instructions requiring Unigard to prove that Engelmann was liable for contribution in the underlying suit. Mutual of Enumclaw also wanted the court to limit

damages to the $20,000 Engelmann had paid to Newmarket under the agreement. The trial court denied these requests and concluded it was up to the jury to decide what damages were contemplated by the settlement agreement. Mutual of Enumclaw has not assigned error to these rulings.

¶16 Among the instructions given to the jury, two were specially tailored to the circumstances of the case. In instruction 6, the court informed the jury that Mutual of Enumclaw had already been found liable and that the jury's job would be to decide what damages, if any, would be awarded:

(1) It has previously been decided that Mutual of Enumclaw breached its duty to defend and indemnify Charles and Helen Engelmann under the insurance policies issued by MOE.

(2) It has also been decided that Mutual of Enumclaw acted in bad faith by failing to defend the Engelmanns and that Mutual of Enumclaw is estopped to deny coverage for the Engelmanns.

(3) It has also been decided that Mutual of Enumclaw's conduct is a violation of the Consumer Protection Act.

(4) It has also been decided that Mutual of Enumclaw's bad faith breach of contract and violation of the Consumer Protection Act was the proximate cause of harm to Charles and Helen Engelmann.

(5) The sole issue for your consideration is determining the amount of damages owed the plaintiff.

Instruction 7 focused the jury on determining the amount of damages proximately caused by Mutual of Enumclaw and "contemplated by" the settlement agreement:

The Court has already determined that the defendant is liable to plaintiff for damages. You must determine the amount of money that will reasonably and fairly compensate the plaintiff for such damages as you find were proximately caused by the defendant.

The defendant is liable for all damages contemplated by the Settlement Agreement and Assignment (Exhibit 28) unless you find that the settlement is the product of fraud and collusion.

> In this case it is the burden of the defendant to rebut the damages presented by the plaintiff. It is for you to determine, based upon the evidence, whether the defendant has rebutted, by a preponderance of the evidence, any particular element of damages sought by the plaintiff.
>
> Your award must be based upon evidence and not upon speculation or conjecture.

Mutual of Enumclaw has assigned error only to instruction 6 and only on the basis that it was unfairly prejudicial because it set forth the bases for Mutual of Enumclaw's liability.

¶17 We are not required to review alleged errors that are not preserved. RAP 2.5(a). Nor are we required to review unassigned errors. RAP 10.3(a)(3), (g). By failing to object or assign error properly, Mutual of Enumclaw waived the arguments it now attempts to raise in connection with bad faith law.

¶18 The arguments are in any event unpersuasive. Mutual of Enumclaw contends the jury should have been asked to decide which entities were actually liable for contaminating the site. Mutual of Enumclaw proposed a verdict form that would have allowed the jury to allocate liability among the former owners of the site. Mutual of Enumclaw wanted to argue that Engelmann was a passive landowner who was not responsible for any of the cleanup costs. This is a theory Mutual of Enumclaw gave up its chance to pursue when it refused to defend Engelmann. This was an action for bad faith breach of the duty to defend, not a toxic tort action. Mutual of Enumclaw was burdened with the presumption that its bad faith failure to defend Engelmann caused him harm. *Kirk*, 134 Wn.2d at 562. The presumed harm was Engelmann's exposure to liability for all the cleanup costs, regardless of what might have actually happened if Engelmann had been able to mount a defense. This is a course that cannot be rerun. *Butler*, 118 Wn.2d at 391.

¶19 Unigard presented evidence of the cleanup costs Engelmann was exposed to as a result of Mutual of

Enumclaw's refusal to defend. Instruction 7 placed the burden upon Mutual of Enumclaw to rebut the damages presented by Unigard. Mutual of Enumclaw's failure to carry its burden before the jury is not grounds for a new trial.

¶20 While a defendant insurer has the burden of rebutting the presumption of harm, the plaintiff has the burden of proving that a covenant judgment is reasonable. *Chaussee*, 60 Wn. App. at 510. Mutual of Enumclaw contends that the trial court should have held a *Chaussee* reasonableness hearing in which Unigard would have to prove the reasonableness of the settlement agreement. But because Mutual of Enumclaw did not request such a hearing below, this issue has been waived. In addition, Mutual of Enumclaw fails to cite authority showing that a reasonableness hearing is required in the absence of a covenant judgment. The point of a reasonableness hearing is to serve as a check upon the inherent temptation for the settling parties to collude and settle for an unreasonably high amount. *See Besel*, 146 Wn.2d at 738. Because Engelmann and Newmarket did not settle on an amount that Engelmann suffered in damages, the determination of damages was a task for the jury. The jury was instructed to award all damages contemplated by the settlement agreement unless the agreement was the product of fraud or collusion. Mutual of Enumclaw had its chance to introduce evidence bearing on that question but did not do so. There was no necessity for a separate reasonableness hearing on the same issue.

¶21 We reject Mutual of Enumclaw's first two assignments of error. Our disposition makes it unnecessary to address Unigard's motion to strike. We now turn to other alleged errors which Mutual of Enumclaw properly preserved and assigned to actual rulings.

## RELEVANCE OBJECTION

¶22 Over objection by Mutual of Enumclaw, the court informed the jury in instruction 6 that Mutual of

Enumclaw had acted in bad faith by failing to defend Engelmann, violated the Consumer Protection Act through its conduct, and breached its contract with Engelmann. Mutual of Enumclaw argues this information was irrelevant or at a minimum unfairly prejudicial. We review rulings under ER 401 and 403 for abuse of discretion. *Alston v. Blythe*, 88 Wn. App. 26, 40-41, 943 P.2d 692 (1997).

¶23 Instruction 6 informed the jury of the liability issues previously decided in the case by way of summarizing previous rulings and explaining that the jury was to focus solely on the determination of the amount of damages owed to Unigard. Doing so did not create a substantial risk of inflaming the jury. And even assuming error, there are grounds for reversal only if the error was prejudicial. *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983). Mutual of Enumclaw does not show that the information in question likely affected the outcome of the trial. The verdict on damages was squarely based on uncontested evidence. Costs already incurred were documented. Lauren Carroll estimated future costs in the range of $250,000 to $375,000. The jury awarded $312,500, a figure right in the middle of the range. Mutual of Enumclaw made little effort to show that the costs were unreasonable or the estimate faulty. We find no abuse of discretion.

## MOTION FOR NEW TRIAL

¶24 Mutual of Enumclaw assigns error to the trial court's denial of its motion for a new trial. The motion was based on the same arguments reviewed above. Because Mutual of Enumclaw failed to show that the court committed reversible trial error, the court did not err in denying the motion for a new trial.

## PREJUDGMENT INTEREST

¶25 The trial court awarded Unigard prejudgment interest. Mutual of Enumclaw argues that Unigard was not entitled to prejudgment interest and alternatively

that the court applied the wrong interest rate. We review a prejudgment interest award for abuse of discretion. *Endicott v. Icicle Seafoods, Inc.*, 167 Wn.2d 873, 886, 224 P.3d 761, *cert. denied*, 130 S. Ct. 3482 (2010). A ruling based on an erroneous legal interpretation is necessarily an abuse of discretion. *Endicott*, 167 Wn.2d at 886.

¶26 A party is entitled to prejudgment interest where the amount due is "liquidated." *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 685, 15 P.3d 115 (2000). A liquidated claim is one where the evidence furnishes data "which, if believed, make it possible to compute the amount due with exactness, without reliance on opinion or discretion." *Weyerhaeuser*, 142 Wn.2d at 685. Even if the claim is disputed, the claim may still be liquidated. *Weyerhaeuser*, 142 Wn.2d at 685.

¶27 The cleanup costs and expenses could be calculated without reliance on opinion or discretion because the amount owed equaled invoices for cleanup and related costs. Because the evidence established an exact amount, the trial court did not abuse its discretion by awarding prejudgment interest.

¶28 Prejudgment interest is allowed in civil litigation at the statutory judgment interest rate. *Mahler v. Szucs*, 135 Wn.2d 398, 429, 957 P.2d 632 (1998). The statute sets the rate for four categories of judgments: (1) breach of contract where an interest rate is specified, (2) child support, (3) tort claims,[1] and (4) all other claims. RCW 4.56.110; *Woo v. Fireman's Fund Ins. Co.*, 150 Wn. App. 158, 165, 208 P.3d 557, *review denied*, 167 Wn.2d 1008 (2009). A "mixed judgment," a judgment based on more than one type of claim, is subject to only one interest rate. *Woo*, 150 Wn. App. at 164. In determining the appropriate interest rate, a court should examine the component parts of the judgment, determine what the judgment is primarily based on, and apply the appropriate category. *See Woo*, 150 Wn. App. at 173.

---

[1] Laws of 2010, chapter 149, section 1, rewrote subsection 3 and limited its reach. In this case, we apply the previous version of the statute.

¶29 The trial court applied category four, calling for an interest rate of 12 percent. Mutual of Enumclaw contends the court should have applied the category three rate of just over 2 percent because the judgment was founded primarily in tort. Unigard defends the court's application of the category four "catchall" interest rate, arguing that the judgment sounded primarily in contract.

¶30 Unigard relies in part on *Jackson v. Fenix Underground, Inc.*, 142 Wn. App. 141, 173 P.3d 977 (2007). In that case, the parties entered into a covenant judgment that specified 12 percent as the annual rate for the judgment. The insurer intervened and argued that the judgment should run at the lower rate for judgments found on tortious conduct. We held the judgment was in category one because the settlement agreement, a contract, specified an interest rate. Here, the settlement did not specify an interest rate, so *Jackson* is not directly on point.

¶31 We said in *Jackson*, "Once parties have agreed to settle a tort claim, the foundation for the judgment is their written contract, not the underlying allegations of tortious conduct." *Jackson*, 142 Wn. App. at 146. Unigard cites this sentence in connection with its claim that the judgment was founded on contract. Unigard emphasizes that the jury was instructed that Mutual of Enumclaw was liable for all damages contemplated by the settlement contract. But our statement in *Jackson* referred to the allegations of tort liability that were resolved by the settlement in the underlying suit. That was the contract that became the foundation for the judgment in question. In this case, the judgment in question resolved Unigard's bad faith claim, as to which there was no settlement agreement.

¶32 *Woo*, relied on by Mutual of Enumclaw, is a closer precedent. In *Woo*, the trial court applied the tort interest rate to a judgment in a case involving a breach of duty to defend, bad faith, and Consumer Protection Act claims, reasoning that the judgment was primarily based on the tortious conduct of the defending insurers. *Woo*, 150 Wn. App. at 162-63. We affirmed. We rejected the argument that

a suit between an insurer and the insured stemming from the breach of the insurance agreement necessarily sounds in contract. *Woo*, 150 Wn. App. at 169. Instead, we held that the nature of the various claims and damages should be examined, taking account of all aspects of the relationships between insurer and insured. In *Woo*, we determined that the judgment was primarily based on amounts founded on tortious conduct. *Woo*, 150 Wn. App. at 173. This was not a close call, inasmuch as the jury's award of $750,000 in damages was specifically for the insurer's tortious failure to act in good faith. The trial court added $250,000 to the judgment to compensate Dr. Woo for the amount he paid in settlement. With reference to this component of the judgment, we determined that the remedy of insurance coverage by estoppel also sounded in tort:

> The court also awarded Dr. Woo $250,000 based on the jury's finding of bad faith of Fireman's Fund and application of the remedy of insurance coverage by estoppel. *This too sounds in tort*.

*Woo*, 150 Wn. App. at 172 (emphasis added).

¶33 Like in *Woo*, Mutual of Enumclaw was sued for breach of duty to defend, bad faith, and Consumer Protection Act claims. Also like in *Woo*, Mutual of Enumclaw was estopped from asserting coverage defenses once bad faith was established. But according to Unigard, this case is unlike *Woo* because there was no award of general damages and the damage verdict is undifferentiated as between bad faith and breach of contract. Unigard made a deliberate decision not to seek general damages for emotional distress.

¶34 Nevertheless, the judgment against Mutual of Enumclaw was based primarily on tortious bad faith conduct. We say "primarily" because if there had been no estoppel, Mutual of Enumclaw could have litigated coverage defenses, including the defense that the insurance policy had a $300,000 per occurrence coverage limit.

¶35 Unigard claims that as the policy had no aggregate limit, the damages awarded by the jury were not necessar-

ily attributable to the bad faith claim. Unigard suggests it is equally likely the jury found the damages flowed from breach of contract. This argument misses the point. Because the tort remedy of estoppel precluded litigation of a coverage defense, Mutual of Enumclaw could not make a factual issue of the actual limits of coverage provided by the contract. In addition, the establishment of Mutual of Enumclaw's liability for bad faith created a presumption of harm, shifting to Mutual of Enumclaw the burden of rebutting any particular element of damages sought by Unigard. Thus, the bad faith aspect of Unigard's case dominated the contract aspect and drove the result.

¶36 The trial court erred by applying the "catchall" interest rate. We reverse the award of prejudgment interest and remand with instructions to correct the amount by applying the tort interest rate under former RCW 4.56.110(3).

## ATTORNEY FEES

¶37 Unigard requests attorney fees on appeal. An insured is entitled to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured. *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52, 811 P.2d 673 (1991). Unigard, standing in place of Engelmann, incurred fees stemming from litigation where Mutual of Enumclaw refused in bad faith to defend its insured. We conclude the *Olympic Steamship* rule applies in this situation. Unigard, though unsuccessful in defending the rate of prejudgment interest, has substantially prevailed on appeal and is entitled to an award of its reasonable attorney fees on appeal. *Peterson v. Koester*, 122 Wn. App. 351, 364, 92 P.3d 780 (2004) (where neither party wholly prevails, the party that substantially prevails on its claims is the prevailing party).

## CONCLUSION

¶38 The award of prejudgment interest is reversed and remanded. The judgment is affirmed in all other respects.

Unigard is entitled to an award of attorney fees subject to compliance with RAP 18.1.

ELLINGTON and SPEARMAN, JJ., concur.