**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| PARKRIDGE PROPERTY, LLC, a Washington limited liability company,<br><br>        Plaintiff,<br><br>        v.<br><br>STANLEY XU and NANLING CHEN, husband and wife and the marital community comprised thereof,<br><br>        Appellants,<br><br>LONGWELL PARKRIDGE, LLC, a Washington limited liability company; BRITTANY PARK APARTMENTS, L.L.C., a Washington limited liability company; and STERLING SAVINGS BANK, a Washington banking corporation,<br><br>        Defendants,<br><br>JUDGMENT SERVICES, LLC, as assignee of STERLING SAVINGS BANK,<br><br>        Respondent. | No. 85986-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — The sole issue in this appeal stemming from litigation that began in 2011 is the applicable interest rate on the judgment. Where, as here, a trial court awards undifferentiated damages for both tort and contract claims, the applicable post-judgment interest rate is determined by whether the damages are

"primarily based on" the judgment debtor's tortious conduct or breach of contract. Here, because the contract claims encompass the tort claims and are the broader of the two types of claims, the trial court did not err in applying the interest rate that applies to a judgment on a breach of contract claim where the underlying contract fails to specify the rate.  We affirm.

I

This is the third appeal in litigation between Stanley Xu and Nanling Chen (the Xus) and various other parties involving financing to facilitate improvements and the Xus' purchase of a 249-unit apartment complex in Everett.  The detailed factual background is set forth in our two prior decisions[1] and will be repeated here only as necessary to the analysis of the discrete legal issue on appeal.

Briefly, through various misrepresentations, the Xus secured an $18 million loan from Sterling Bank on behalf of an entity owned by the Xus and Charles Diesing.  The Xus personally guaranteed the loan.  Sterling paid off a prior loan and deposited the remaining loan proceeds—approximately $2.7 million—in the Xus' personal bank account.  After Diesing discovered the misconduct, he initiated litigation on behalf of his company against the Xus and others.  A court-appointed receiver later sold the real property.  The sale proceeds were distributed to Sterling, but were not sufficient to satisfy the Sterling loan.  The total deficiency amount was $676,217.42.

---

[1] See *Sterling Sav. Bank v. Xu*, No. 72149-6-I (Wash. Ct. App. Sept. 28, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/721496.pdf., and *CFD Funding I, LLC v. Xu*, No. 83604-8-I (Wash. Ct. App. April 3, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/836048.pdf.

In the ensuing litigation, Sterling asserted against the Xus both tort claims for fraudulent and intentional misrepresentation, fraudulent omission, and fraudulent inducement and a contract claim for breach of the personal guaranty. Sterling then moved for summary judgment against the Xus. At the hearing on Sterling's motion, the Xus conceded liability on the breach of contract claim and contested liability only as to the alleged fraud. The trial court ruled in Sterling's favor and entered judgment against the Xus in the amount of $676,217.42 ("the Sterling Judgment"). Eventually, the Sterling Judgment was assigned to Judgment Services, LLC.

In 2023, after resolving an appeal related to other issues, this court remanded the matter and directed the trial court to address Judgment Services' motion to determine the interest rate applicable to the Sterling Judgment. On remand, the trial court ruled, as Judgment Services had argued, that the principal judgment amount accrued interest at 12 percent per annum under RCW 4.56.110(6), which we quote and discuss below. The court entered an updated judgment in accordance with that ruling. The Xus appeal.

II

RCW 4.56.110 governs the rate at which post-judgment interest accrues on judgments in civil litigation. It identifies particular interest rates for several categories of judgments, including those founded on (1) written contracts that specify an interest rate, (2) unpaid child support, (3) tortious conduct, (4) unpaid private student loan debt, and (5) unpaid consumer debt. RCW 4.56.110(1)-(5). Lastly, there is also a catch-all provision, RCW 4.56.110(6), for judgments that are

not listed in RCW 4.56.110(1)-(5). Because an award of post-judgment interest is mandatory under the statute and involves application of the statute to particular facts, we review the trial court's decision de novo. *TJ Landco, LLC v. Harley C. Douglass, Inc.*, 186 Wn. App. 249, 256, 346 P.3d 777 (2015).

The Sterling Judgment is based on more than one type of claim (tort and contract) and is therefore a "mixed judgment." *Woo v. Fireman's Fund Ins. Co.*, 150 Wn. App. 158, 164, 208 P.3d 557 (2009). Such a judgment is subject to only one interest rate. *Id*. Here, because the guaranty does not specify an interest rate, RCW 4.56.110(1) does not apply. Nor do RCW 4.56.110(2), (4), and (5) apply. Instead, the interest rate that applies to the Sterling Judgment is either provided by RCW 4.56.110(3)(b), which governs judgments founded on the tortious conduct of individuals and private entities, or RCW 4.56.110(6), which governs judgments that are not covered by RCW 4.56.110(1)-(5), including judgments on a breach of contract claim where the underlying contract fails to specify an interest rate. The interest rate that would apply under RCW 4.56.110(6) is 12 percent.[2] According to Judgment Services, the interest rate that would apply to the Sterling Judgment under RCW 4.56.110(3)(b) is 5.25 percent.[3]

Given the disparity in interest rates, the Xus predictably claim that tortious conduct is the primary basis for their liability. They focus on the trial court's order

---

[2] RCW 4.56.110(6) states: "Except as provided under subsections (1) through (5) of this section, judgments shall bear interest from the date of entry at the maximum rate permitted under RCW 19.52.020 on the date of entry." RCW 19.52.020(1) sets the maximum legal rate of interest at twelve percent or four percentage points above the "equivalent coupon issue yield," whichever is higher.

[3] RCW 4.56.110(3)(b) states: "Except as provided in (a) of this subsection [relating to judgments founded on the tortious conduct of a public agency], judgments founded on the tortious conduct of individuals or other entities, whether acting in their personal or representative capacities, shall bear interest from the date of entry at two percentage points above the prime rate . . . ."

granting summary judgment "for breach of guaranty and fraud." That order includes the following findings:

1. Mr. Xu and Ms. Chen knowingly made material, false representations to Sterling Bank, intending Sterling Bank to rely on them, which induced Sterling to make the $18,000,000.00 loan to Parkridge Property, LLC (Parkridge Loan).

2. Sterling Bank had a right to rely on Mr. Xu and Ms. Chen's representations. Sterling Bank relied on Mr. Xu and Ms. Chen's representations to its detriment.

3. Sterling Bank suffered a loss in the amount of $676,217.42 due to its reliance on Mr. Xu and Ms. Chen's false representations.

4. Mr. Xu and Ms. Chen executed a continuing Guaranty, promising to pay Sterling Bank all amounts owing under the Parkridge Loan.

The Xus emphasize that while the trial court specifically found that their fraudulent conduct caused the damages Sterling incurred, it made no specific finding that the damages resulted from breach of the guaranty. The Xus also argue that the fraud claims dominated Sterling's case because (1) Sterling characterized the guaranty itself as a part of the Xus' fraudulent inducement to secure the loan, (2) the fraud claims were more numerous than the contract claims, and (3) the fraud claims were the focus of the summary judgment hearing and the only claims discussed by the court in its oral ruling.

Judgment Services, in contrast, asserts that the judgment is primarily based on the Xus' liability for breach of contract because all components of the damage award—principal, interest, late fees, penalty, attorney fees, and costs—represent the debt that arose from the underlying contracts, including the promissory note, the deed of trust, and the guaranty. Judgment Services contends that Sterling's fraud claim was "unnecessary to obtain any of the amount awarded in the Sterling

Judgment." Judgment Services also points out that the summary judgment hearing and the court's findings focused on the fraud claims because the Xus conceded liability under the guaranty for the remaining amount of the loan.

The parties claim that two cases are especially instructive in determining what interest rate applies here. In the first case, *Woo*, Woo sued Fireman's Fund, his liability insurance carrier, after it denied coverage and declined to defend him in a suit brought by a former employee. 150 Wn. App. at 162. Woo alleged breach of the duty to defend, bad faith, and violation of the Consumer Protection Act (CPA). *Id*. at 163. The court granted summary judgment to Woo on the breach of contract claim, and the jury found in his favor on the remaining claims. *Id*. The court entered judgment for a principal amount of $1,081,554.95. *Id*. Fireman's Fund then paid the judgment, including post-judgment interest under RCW 4.56.110(3), and moved for full satisfaction of judgment, which the trial court granted. *Id.* at 164.

On appeal, Woo argued that the judgment was founded on contract, not tort as the trial court had concluded, because his relationship with Fireman's Fund arose from an insurance contract, whereas Fireman's Fund maintained that the parties' contractual relationship was "not dispositive." *Id*. at 167, 169. We agreed with Fireman's Fund and concluded that, in order to determine whether the judgment was based on contract or tort, it was necessary to take into account "'all aspects of the . . . relationship'" and all aspects of the judgment. *Id*. at 170 (quoting *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 394, 823 P.2d 499 (1992)). We then examined each component of the judgment: the jury's award of $750,000 by

6

special verdict as damages for bad faith; the court's award of $71,554.95 for damages caused by Fireman's Fund's breach of the duty to defend; the court's award of $250,000 for damages based on the verdict of bad faith and application of coverage by estoppel; CPA damages totaling $10,000; attorney fees premised on bad faith totaling $96,396.22; and attorney fees premised on breach of the duty to defend totaling $71,524.25. *Id*. at 172-73. Observing that over $1 million of the damages was based on claims sounding in tort, this court held that "[c]onsidering the component parts of the judgment, it is clear that it is primarily based on amounts founded on or based on the tortious conduct" of Fireman's Fund. *Id.* at 173. Therefore, the applicable post-judgment interest rate was the one that applies to tort judgments.

The second case that the parties claim is instructive here is *Unigard Ins. Co. v. Mutual of Enumclaw Ins. Co.*, 160 Wn. App. 912, 250 P.3d 121 (2011), which involved insurance coverage and bad faith litigation related to environmental cleanup costs. The trial court granted summary judgment as to liability, and the case proceeded to a jury trial on damages. *Id*. at 917. The total judgment was over $2 million based on (i) jury verdicts for economic damages, (ii) damages awarded by the court under the CPA, and (iii) attorney fees and costs. *Id*. at 918. The trial court then applied the 12 percent interest rate under RCW 4.56.110(6) to the liquidated portion of the judgment consisting of past economic damages. *Id.* at 926. Mutual of Enumclaw, Unigard's insurer, appealed.

On appeal, Mutual of Enumclaw argued that the trial court should have applied the rate applicable to judgments founded on tort claims, and we agreed.

*Id*. at 928. Citing *Woo*, we stated that, to determine the appropriate interest rate for a mixed judgment, "a court should examine the component parts of the judgment, [and] determine what the judgment is primarily based on." *Id*. at 925. Even though the damages awarded to Unigard were undifferentiated as between tort and contract claims, we reasoned that the damages were primarily based on tort because, once bad faith was established, Mutual of Enumclaw was estopped from asserting coverage defenses, including the defense that the underlying policy had a $300,000 per occurrence coverage limit. *Id*. at 927-28. In addition, the "establishment of . . . bad faith created a presumption of harm" and shifted the burden to Mutual of Enumclaw to rebut all alleged elements of damage. *Id*. at 928. Accordingly, we concluded that the tort-based aspect of the litigation "dominated the contract aspect and drove the result." *Id*.

While both parties claim that *Woo* and *Unigard* support their position, the facts at issue here are materially different from those in *Woo* and *Unigard*. Because the trial court here awarded undifferentiated damages of $676,217.42 on both the contract and tort claims, we cannot determine the applicable interest as we did in *Woo* by categorizing each component of damages and comparing the amounts. We also cannot say that the judgment was primarily based on the Xus' tortious conduct simply because the fraud allegations were more numerous or because the Xus conceded liability under the guaranty. The emphasis on tort claims in the summary judgment proceeding and in the trial court's findings simply reflects the fact that fraud was the only contested issue. Nor does it seem relevant that, according to Sterling's theory of the case, the Xus executed the guaranty as

8

"consideration" for the loan and "to induce" Sterling to make the loan. It does not appear that the Xus' motivation for executing the guaranty was relevant to establishing any element of Sterling's contract claims. Sterling's theory as to an issue it was not required to prove fails to establish that the judgment was primarily based in tort. And unlike *Unigard*, we also cannot say that one claim "drove the result" because once that claim was established it affected the extent of liability on the other type of claim by precluding potentially critical defenses or by shifting the burden of proof. *Id.*

Instead, the dispositive consideration here—consistent with the courts' focus on "all aspects" of the parties' relationship and judgment in *Woo* and *Unigard*—is the *breadth* of the underlying claims. As Judgment Services points out, in addition to breaching their obligation to satisfy "all obligations of the Borrower" under the loan, the Xus' fraudulent conduct constituted a breach of a separate, specific term of the contract. Sterling alleged breach with respect to both aspects of the contract. It was not necessary to establish fraud to demonstrate that the Xus breached their obligation to make "punctual payment when due, whether at stated maturity, by acceleration or otherwise of all obligations of the Borrower." And contrary to the Xus' claim in reply, Sterling also alleged that the Xus breached the provision of the guaranty that obligated them to pay all "liabilities, costs, [and] expenses" stemming from "fraud, material misrepresentation or failure to disclose a material fact." Because this latter aspect of Sterling's contract claim *encompassed* Sterling's tort claims, the contract claims are *broader than* those based in tort.

9

On this record, where we cannot substantially replicate the analysis in *Woo* and *Unigard*, we hold that the Sterling Judgment is primarily based on the contract aspects of the litigation because of the broader nature of the contract claims. The trial court did not err in concluding that the interest rate under RCW 4.56.110(6) applies.

Affirmed.

WE CONCUR:

_Feldman, J._

_Chung, J._            _Coburn, J._