IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TJ LANDCO, LLC, a Washington Limited Liability Company, | ) ) ) | No.   31992-0-III Consolidated with |
| Respondent, | ) ) | No.   32208-4-III |
| v. | ) ) ) | |
| HARLEY C. DOUGLASS, INC., a Washington Corporation; SECURE SELF STORAGE, LLC, a Washington Limited Liability Company; HARLEY C. DOUGLASS and JANE DOE DOUGLASS, husband and wife, and the marital community comprised thereof; and JOHN DOE PARTNERSHIP, | ) ) ) ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Appellant. | ) ) | |

KORSMO, J. — This appeal arises from the modification of the provisions of a

contract governing payment and interest. Concluding that the trial court adopted a

reasonable construction of the contract at the bench trial, we affirm the interest rate

rulings and remand for an additional hearing of the question of the attorney fee award for

work performed by law students.

## FACTS

The subject of the contract was land near the southwest borders of the city of

Spokane. Respondent TJ Landco LLC (Landco) agreed in February 2004, to sell the 94

acre parcel of land to appellant Harley C. Douglass, Inc. (Douglass) for $3.6 million. The seller was required to obtain preliminary plat approval from the city of Spokane and obtain the city's agreement to extend water and sewer by the end of 2005.

The parties used a standard real estate purchase and sale agreement form. An addendum to that form included the following language concerning the purchase price and interest:

> 1) Purchase price of 3.6 Million Dollars ($3,600,000.00) to be paid as follows:
> A) Two Million Dollars ($2,000,000.00) as down payment due at closing
> B) The balance of One Million Six Hundred Thousand Dollars will be paid in annual installments of $250,000.00 per year plus interest until paid in full.
> C) The unpaid balance will carry and [sic] interest rate of 6% per annum.
> D) The first annual payment will begin exactly 2 years from the date of closing.
> E) Purchaser and Seller agree that the interest rate for the first two years of this transaction will carry the minimum Federal Rate allowable. At the end of the first two years the interest rate will be 6% per annum until balance is paid in full.
> F) . . . .
> G) Deed releases will be prepared on a per acre basis on the remaining balance of land and executed according to the installment payment schedule noted above.

Clerk's Papers (CP) at 49.

Three of the provisions mentioned interest, and two of them gave competing commands concerning the rate to be charged. Subsequent developments were to make the situation more complicated.

The preliminary plat approval was received October 9, 2006, and the sale closed thereafter. Tod Lasley, the owner of Landco, met on December 22, 2006, with Harley Douglass, the owner of Douglass. The two men agreed that at that point Douglass owed Landco $1,114,558.19. Douglass paid $114,558.19 at that time. On a balance sheet accounting for payments made and balance owing on the land sale, the men added two separate handwritten notes. Each was dated December 22, 2006, and signed by both men. The first stated:

> 1,000,000.00 Balance,
> Payment of 200,000.00 per year for 5 years at zero interest.

The remaining note:

> #889
> Based on 371 Lots
> If less credit will be given out of 1,000,000.00

CP at 68.

The parties treated these writings as a modification of the original contract. Douglass made a single payment of $200,000 on March 4, 2008, but did not make any additional payments thereafter. He later contended that Landco had not fulfilled all of its obligations under the contract and that only 304 of the anticipated 371 lots would be approved. Douglass sold the land to his parents for $500,000 without developing it.

Landco filed suit in February 2010, contending that Douglass had breached the contract. Douglass defended on the basis that he was entitled to an offset due to the limited number of lots approved and, thus, no further moneys were owing. The case

3

proceeded to a four day bench trial in the Spokane County Superior Court. In addition to the questions of breach and offset, the parties hotly contested the interest rate governing any judgment as well as appropriate attorney fees.

The trial court concluded that Douglass had breached the contract and that he had failed on his counterclaim for an offset. The court awarded Landco the remaining $800,000 on the contract, plus prejudgment interest at 12 percent and postjudgment interest at 12 percent. Detailed findings in support of the bench verdict were entered. Douglass promptly appealed to this court.

After hearing, the trial court awarded Landco its attorney fees and costs, including $24,514.16 for work done by law student "legal interns." The court denied Landco's request for fees for work performed by paralegals. Douglass appealed from the fee award. This court consolidated the two appeals and subsequently heard oral argument.

## ANALYSIS

Douglass challenges the prejudgment and postjudgment interest rates, as well as the fees awarded for the work performed by the law students. Both parties seek attorney fees on appeal under the contract. We initially address the two interest rate arguments as one issue before turning to the two attorney fee contentions.

*Interest Rate*

Douglass contends that the zero percent interest rate in the modification provision governs both the prejudgment and postjudgment interest rates, thus making the court's

4

judgment in error. Landco contends that the parties did not contract for a rate to govern in the event of a breach of the contract, requiring the court to apply the statutory provisions that currently provide for 12 percent interest. No party contends that the six percent rate initially provided by the contract is still in force.[1] Because the same operative facts control the outcome, we consider the two arguments together even though different statutes govern the two situations.

Prejudgment interest is governed by RCW 19.52.010.[2] As relevant here, the statute states in part:

> (1) Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties . . . .

The governing statute for postjudgment interest is found in RCW 4.56.110.[3] The relevant provisions relate:

> Interest on judgments shall accrue as follows:
>
> (1) Judgments founded on written contracts, providing for the payment of interest until paid at a specified rate, shall bear interest at the rate specified in the contracts: PROVIDED, That said interest rate is set forth in the judgment.
> . . . .

---

[1] Both parties agreed at oral argument that the six percent figure was inapplicable and neither side argued for it in their respective briefing.

[2] This statute had its genesis in the LAWS OF 1854, p. 380 § 1, but much of the current language was enacted by LAWS OF 1895, c. 136.

[3] This statute, too, draws much of its current language from the LAWS OF 1895, c. 136.

(4) Except as provided under subsections (1), (2), and (3) of this section, judgments shall bear interest from the date of entry at the maximum rate permitted under RCW 19.52.020 on the date of entry thereof.

RCW 4.56.110(1), (4). RCW 19.52.020(1) provides interest at the higher figure of either 12 percent or the average treasury bill rate plus four percent.

Appellate courts review awards of prejudgment interest for abuse of discretion. *Scoccolo Constr., Inc. v. Renton*, 158 Wn.2d 506, 519, 145 P.3d 371 (2006). A party is entitled to prejudgment interest on liquidated claims[4] to compensate them for loss of use on money that is wrongfully withheld by another party. *Mall Tool Co. v. Far West Equip. Co.*, 45 Wn.2d 158, 169, 273 P.2d 652 (1954); *see also Architectural Woods, Inc. v. State*, 92 Wn.2d 521, 598 P.2d 1372 (1979) (discussing the purpose of prejudgment interest in applying the standard to a judgment against the State). Trial courts may exercise discretion in the amount of the award, but must give a reasonable explanation in equity for any deviance from the standard rate. *See Dave Johnson Ins. Inc. v. Wright*, 167 Wn. App. 758, 776 n.10, 275 P.3d 339 (2012).

Postjudgment interest is mandatory due to RCW 4.56.110. *Womack v. Von Rardon*, 133 Wn. App. 254, 264, 135 P.3d 542 (2006); *Rufer v. Abbott Lab.*, 154 Wn.2d 530, 551-53, 114 P.3d 1182 (2005). Consequently, awards of postjudgment interest are matters of law that are reviewed de novo. *Sintra, Inc. v. Seattle*, 96 Wn. App. 757, 980 P.2d 796 (1999).

---

[4] There is no dispute here that the claims are liquidated.

When a party breaches an obligation to pay a liquidated debt, a new forbearance is created. *Kahl v. Ablan*, 160 Wash. 201, 206, 294 Pac. 1010 (1931) (citing cases). The creation of the new forbearance triggers application of the prejudgment interest statute. RCW 19.52.010(1) ("Every loan or forbearances of money . . . shall bear interest."). *Accord, Smith v. Olympic Bank*, 103 Wn.2d 418, 425, 693 P.2d 92 (1985) ("The rate of prejudgment interest is governed by RCW 19.52.010."); *Thomas v. Ruddell Lease-Sales, Inc.*, 43 Wn. App. 208, 216, 716 P.2d 911 (1986) ("RCW 19.52.010, governing prejudgment interest, provided for a rate.").[5] Thus, the trial court here correctly recognized that prejudgment interest was required when the payment obligation was breached. The only question was whether the statutory interest rate, or some contract rate, applied.

Douglass argues for the zero percent rate governing the payments expected over the five year period, while Landco contends that the statutory rate applies because the

---

[5] Some courts wrongly cite to the postjudgment interest statute, RCW 4.56.110, as the basis for an award of prejudgment interest due to dicta in *Mahler v. Szucs*, 135 Wn.2d 398, 429, 957 P.2d 632 (1998) (*impliedly overruled on other grounds by Matsyuk v. State Farm Fire & Cas. Co.*, 173 Wn.2d 643, 272 P.3d 802 (2012)), where the court stated that prejudgment interest was allowed at the statutory judgment interest rate even while rejecting the claim for prejudgment interest. *See, e.g., Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 51, 169 P.3d 473 (2007); *Unigard Ins. Co. v. Mut. of Enumclaw Ins. Co.*, 160 Wn. App. 912, 250 P.3d 121 (2011); *Palermo at Lakeland, LLC v. Bonney Lake*, 147 Wn. App. 64, 87-89, 193 P.3d 168 (2008). Although in many instances the same interest rate will apply under either statute, we believe it is inaccurate to rely upon the postjudgment interest rate statute for calculation of prejudgment interest.

parties did not address the possibility of a new forbearance being created due to a breach of the modified payment schedule. The trial court agreed with Landco, and so do we.

Although Landco agreed to forego interest during the five year payment period set out in the modification, it also expected to receive $200,000 each December during that time frame. The modification did not include an agreement by Landco that it would accept zero percent interest on each outstanding $200,000 installment if it went unpaid when due. Instead, each missing installment created a new forbearance of $200,000. The contract did not address a new forbearance resulting from breach of the contract.[6] Accordingly, RCW 19.52.010(1) governs and mandates interest at 12 percent on each forbearance.[7]

In sum, we affirm the court's award of prejudgment interest calculated from the time each installment became due. Each missing payment created a new forbearance. In

---

[6] It is not a new concept that parties can contractually account for interest in case of the possibility of breach. Chief Justice Taney long ago observed: "The contract being entirely silent as to interest, if the notes should not be punctually paid, the creditor is entitled to interest after that time by operation of law, and not by any provision in the contract." *Brewster v. Wakefield*, 63 U.S. 118, 127, 16 L. Ed. 301 (1859).

[7] Douglass additionally challenged the date from which prejudgment interest began. The trial court charged interest on each installment of $200,000 from the date on which the installment was due. Douglass asserts that the court should have charged interest on the entire sum from December 22, 2011, the date on which the balance was to have been paid in full. However, prejudgment interest is appropriate from the date upon which the liquidated claims were created. *See, e.g., Winkenwerder v. Knox*, 51 Wn.2d 582, 320 P.2d 304 (1958). The trial court concluded that a new debt became owing each time a payment was missed. The decision to begin interest at that time was correct.

8

the absence of a contract provision addressing a new forbearance, the statutory rate of 12 percent was appropriate. RCW 19.52.010(1).

Douglass also argues that the zero percent contract rate applies to postjudgment interest rather than the "default" 12 percent rate established by RCW 4.56.110(4) in conjunction with RCW 19.52.020. A contractual rate of interest was not available under the plain language of the statute.

As noted previously, the opening clause of RCW 4.56.110(1) states in part: "Judgments founded on written contracts, providing for the payment of interest *until paid* at a specified rate, shall bear interest at the rate specified in the contracts."[8] (emphasis added). The language "until paid" is a term of art. Our cases have long distinguished between agreements to pay interest at maturity and agreements to pay interest "until paid." *E.g.*, *Bank v. Doherty*, 42 Wash. 317, 329-30, 84 Pac. 872 (1906).[9] The quoted

---

[8] The parties have not argued, and hence we do not address, whether an agreement to pay zero interest is in fact an agreement "providing for the payment of interest" under this statute. That question will await another day. We will assume for purposes of this opinion only that zero percent interest is a contract "providing for the payment of interest" under the statute.

[9] "If the parties had intended the note in question to draw interest at the rate of two per cent per month after maturity, it would have been an easy matter to have placed such intention beyond doubt by simply adding the words 'until paid' after the words 'two per cent per month.' They did not do so, and we must, therefore, conclude that the contract contained all of the agreement, and that the parties intended to let the law fix the rate of interest after maturity, if the note should not be paid when it became due." *Bank*, 42 Wash. at 330.

statutory language was enacted by the LAWS OF 1895, ch. 136 § 4, and has not varied from that time.

While the original agreement called for six percent interest "until paid," the modification did not. It called for zero percent interest over a five year period. Hence, the language of the statute precludes applying the zero percent contract rate to the judgment in this case.

Recognizing the problem, Douglass argues that the "until paid" language originally used in the contract still applied to the modified payment obligation. In other words, Douglass contends that zero percent language of the modification merely substituted in for the six percent language of the existing contract provision. For several reasons, we are not persuaded.

First, the parties both agreed at oral argument that the six percent provision was inapplicable. If that is correct, and we believe that it is, the modification must have supplanted the original payment terms or else the six percent provision would have revived after the five year zero interest period expired. More importantly, in light of the fact that the modified payment provision totally changed the amount of the outstanding debt and its repayment terms, and the second modification allowed for credit if fewer than expected lots were permitted, it would be impossible to read the 2006 changes to the contract in harmony with the original terms. Part of the consideration for the zero percent interest provision was the fact that Douglass advanced payments before it needed to in

order to assist Landco. If these actions were intended as only a temporary change to the contract, the parties could easily have said that all other payment-related provisions continued in force or would be revived in the event payments were not made. It did not.

The only fair reading of these terms is that they supplanted the existing payment and interest schedule. The total debt was reduced to $1,000,000 and a schedule implemented to pay that sum in five annual payments with no additional interest. At the end of the period the contract would be fulfilled. The parties did not contemplate that there would be need to revive any prior contract terms or further modify the agreement.

As modified, the contract did not provide "for the payment of interest until paid." RCW 4.56.110(1). Accordingly, there was no contractual interest rate that governed the judgment award. The trial court correctly applied the "default" 12 percent interest provided by RCW 4.56.110(4) and RCW 19.52.020(1).

The trial court correctly calculated both the prejudgment and postjudgment interest awards. There was no error.

*Attorney Fees for Legal Interns*

Douglass also appeals from the trial court's attorney fees award for the service of law student "legal interns." The record is insufficient to decide this issue and we remand for further hearing.

Attorney fee awards are reviewed for abuse of discretion. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987). Discretion is abused when it is

11

exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Discretion also is abused if it is exercised contrary to law. *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995). We also note that trial courts, not appellate courts, find facts. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Accordingly, this court reviews the trial court's factual determinations for sufficiency rather than make our own credibility determinations. *Cherry Lane*, 153 Wn. App. at 717.

In *Absher Construction Co. v. Kent School District No. 415*, 79 Wn. App. 841, 905 P.2d 1229 (1995), this court set forth six criteria for determining whether services performed by nonlawyers was compensable under an attorney fee award. Those criteria:

> (1) the services performed by the nonlawyer personnel must be legal in nature;
> (2) the performance of these services must be supervised by an attorney;
> (3) the qualifications of the person performing the services must be specified in the request for fees in sufficient detail to demonstrate that the person is qualified by virtue of education, training, or work experience to perform substantive legal work;
> (4) the nature of the services performed must be specified in the request for fees in order to allow the reviewing court to determine that the services performed were legal rather than clerical;
> (5) as with attorney time, the amount of time expended must be set forth and must be reasonable; and
> (6) the amount charged must reflect reasonable community standards for charges by that category of personnel.

*Id.* at 845.

12

The trial court considered these criteria in awarding the fees for the law students' work and in denying the request for fees for the paralegal's work. The trial court ruled that the fees for "research, editing and other administrative functions" performed by "legal interns" "are allowable." CP at 927. Douglass argues that the first three criteria were not satisfied by the record submitted to the trial judge.

We disagree with Douglass as to the first two criteria. Landco submitted billing records to meet its *Absher* burden with respect to fees sought for the activities of its attorneys, paralegals, and law students. The records were detailed enough to allow Douglass to present substantial detailed argument, orally and in writing, in opposition to portions of the fee request for the attorneys. Douglass successfully used the information provided to convince the trial court to trim several areas of the fee requested by the attorneys because it was duplicative of other work or related to failed motions. Douglass also was able to use the records to convince the judge that the paralegal fee request was inadequate. Accordingly, we conclude that the billing records adequately conveyed that the law students were performing legal services.

The second *Absher* criterion is whether the nonlawyers were supervised by an attorney. The billing records adequately satisfied that criterion here, although a direct statement by the supervising attorney would have been more helpful. The record does reflect that the research performed by the law students was incorporated into memoranda

13

and other legal decision-making by the attorneys. This showed that the students were supervised.

However, we agree in part that the third *Absher* factor was not necessarily satisfied. That criterion requires proof that the nonlawyer was "qualified by virtue of education, training or work experience to perform substantive legal work." *Absher*, 79 Wn. App. at 845. Other than identifying the students as "legal interns" who were full-time students at the Gonzaga University School of Law, there is scant evidence concerning the qualifications of these students. Douglass quite properly points out that a student beginning her law school experience does not demonstrate requisite training and education just from the fact of full-time attendance at school.

The trial court did find, and Landco did argue, that the students were "legal interns." APR 9 sets forth a process by which law students, among others, can engage in a limited law practice as "Licensed Legal Interns" under the supervision of an experienced attorney. APR 9(a). A law student must demonstrate the requisite educational success to qualify as a licensed legal intern, typically by completing at least two years of law school. APR 9(b). An experienced attorney must supervise the intern, and the Washington State Bar Association is authorized to conduct background investigations similar to those required of applicants to the bar. APR 9(c), (d). We have no hesitation in holding that a licensed legal intern satisfies the third *Absher* criterion.

14

Landco did not put forth evidence that its students possessed an APR 9 license. However, for decades these students colloquially have been referred to as "Rule Nines" or "legal interns." If Landco and the trial court were using that same short-hand designation for these licensed legal interns, then the evidence did support the fee award. We thus remand this portion of the case to the trial court to make that determination.

We do not suggest that only licensed legal interns possess the requisite education or training to satisfy the third *Absher* criterion. There are multiple methods of proving that a non-licensed law student is qualified by education or experience. However, Landco put on no other proof on this point and now can sustain the trial court's ruling only if its "legal interns" were licensed legal interns per APR 9.

We remand for hearing on the status of the "legal interns" whom the trial court awarded attorney fees. If Landco presents evidence that they were licensed in accord with APR 9, the trial court should make such a finding and affirm its earlier award. If not, the trial court should strike the fee award.

*Attorney Fees on Appeal*

Both sides seek attorney fees on appeal in accordance with the contract. *See* RCW 4.84.330; *Hill v. Cox*, 110 Wn. App. 394, 411-12, 41 P.3d 495 (2002). Attorney fees are available on appeal where granted by applicable law. RAP 18.1. The prevailing party is awarded fees under the statute. RCW 4.84.330.

15

Landco prevailed in the original appeal from the judgment concerning the interest awards. It is entitled to its fees in that appeal provided that it timely complies with RAP 18.1(d). Our commissioner will consider a timely request. RAP 18.1(f).

The second appeal, concerning the attorney fee award, presents a muddled picture. Landco did not prevail in that action and is not entitled to its fees for that portion of this consolidated appeal. It is unclear at this time whether Douglass will prevail or not. If Douglass prevails on remand by obtaining any relief on the fee award related to the law students, then it is entitled to its fees on appeal related to this issue. We direct the trial judge to determine that request. RAP 18.1(i). Whichever party prevails on remand would be entitled to its fees for its efforts in the trial court.

Accordingly, the judgment is affirmed and the matter remanded for hearing on the award of attorney fees relating to the law students.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.

16